IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| V.  § | No. 3:14-cr-383-K |
| § | |
| JOSHUA SHANE DRONEBARGER, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

By an electronic order dated May 7, 2021, United States District Judge Ed Kinkeade referred this matter to the undersigned United States magistrate judge to conduct a hearing on the alleged violations contained in the Petition for Person Under Supervision filed with the Court on March 10, 2021 [Dkt. No. 41] and to make findings and a recommendation for modification, revocation, or termination of the defendant's term of supervised release, including a recommended disposition under 18 U.S.C. § 3583(e). *See* Dkt. No. 54.

Defendant Joshua Shane Dronebarger personally appeared in person and through counsel for a final revocation hearing by VTC (over Zoom) on June 23, 2021.

After consideration of the filings, evidence, testimony, oral argument, and applicable law, the undersigned recommends that Defendant's terms of supervised release should be revoked as explained below.

## Background

Defendant Joshua Shane Dronebarger was sentenced to a sentence of 84 months, followed by a 3-year supervised release term, for the offense of Bank Robbery, in violation of 18 U.S.C. § 2113(a).

Defendant began his term of supervised release on October 13, 2020.

### A. Alleged Violations

On March 10, 2021, the supervising United States Probation Officer (USPO) submitted a petition for offender under supervision (Petition) alleging the following four violations:

### I.

### Violation of Mandatory Condition

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

### Violation of Standard Condition No. 7

The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician.

### Nature of Noncompliance

Joshua Shane Dronebarger violated these conditions of supervised release by using and possessing methamphetamine, an illegal controlled substance, in or about November 2020. On November 30, 2020, Mr. Dronebarger submitted a urine specimen in the Northern District of Alabama that tested positive for methamphetamine. Furthermore, on December 16, 2020, the national drug testing laboratory confirmed the specimen positive for methamphetamine.

Mr. Dronebarger violated these conditions of supervised release by using and possessing methamphetamine, an illegal controlled substance, in or about February 2021. On March 8, 2021, Mr. Dronebarger verbally admitted to USPO Morris that he used methamphetamine on February 28, 2021, prior to contact with Austin, Texas, police and his transport to a hospital in Austin, Texas, on the same date.

## II.

### Violation of Standard Condition No. 3

The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer

### Violation of Special Condition

The defendant shall participate in a program (inpatient and/or outpatient) approved by the U.S. Probation Office for treatment of narcotic, drug, or alcohol dependency, which will include testing for the detection of substance use or abuse. The defendant shall abstain from the use of alcohol and/or all other intoxicants during and after completion of treatment. The defendant shall contribute to the costs of services rendered (copayment) at a rate of at least $10 per month.

### Nature of Noncompliance

Mr. Dronebarger violated these conditions of supervised release when he failed to schedule his substance abuse assessment as instructed by his probation officer. On December 18, 2020, U.S. Probation Officer Jillian Biley-Wooden (USPO Wooden) referred Mr. Dronebarger for a substance abuse assessment and instructed him to call and schedule an intake appointment. On December 23, 2020, USPO Wooden was notified that Mr. Dronebarger failed to schedule the assessment as instructed and scheduled one for him on January 6, 2021.

On January 6, 2021, Mr. Dronebarger violated this condition of supervised release when he failed to report as instructed for his substance abuse assessment while be supervised in the Northern District of Alabama. On December 23, 2020, USPO Wooden contacted Mr. Dronebarger and notified him of the time and date for the substance abuse assessment intake appointment.

## III.

### Violation of Special Condition

The defendant shall participate in mental health treatment services as directed by the probation officer until successfully discharged. These services may include medications prescribed by a licensed physician. The defendant shall contribute to the costs of services rendered (copayment) at a rate of at least $10 per month.

### Nature of Noncompliance

On December 17, 2020, Mr. Dronebarger violated this condition of supervised release when he failed to report as instructed for his mental health assessment while being supervised in the Northern District of Alabama. On November 30, 2020, U.S. Probation Officer Tyler Blake (USPO Blake) instructed Mr. Dronebarger to report for his mental health assessment scheduled for December 17, 2020.

### IV.

### Violation of Mandatory Condition

The defendant shall not commit another federal, state or local crime.

### Violation of Mandatory Condition

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

### Violation of Standard Condition No. 7

The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician.

### Nature of Noncompliance

On March 4, 2021 in Austin, Texas, Joshua Dronebarger violated these conditions of supervised release when he operated a motor vehicle after he used methamphetamine and alcohol and crashed the vehicle into a telephone pole, as evidenced by his arrest by Austin, Texas, police for Driving While

Intoxicated 3rd or More, a 3rd Degree felony, pending in Case No. D1DC21201154,Travis County, Texas. On March 8, 2021, Mr. Dronebarger posted bond and was released from custody.

On March 4, 2021, Austin, Texas police officer Miguel Saenz filed an Affidavit of Arrest in Travis County, Texas, detailing the offense conduct. Officers Saenz and Bullock were dispatched to an urgent crash call on March 4, 2021, at approximately 3:55 a.m. Officer Saenz observed a gold Cadillac with Alabama license plates that had crashed into a telephone pole. The unoccupied vehicle was running and the keys were in the ignition. While looking for the occupants of the vehicle, Officer Bullock saw a Hispanic male in the vicinity who was later identified as Joshua Shane Dronebarger. After contact was made with Mr. Dronebarger, Officer Saenz questioned him about the accident and he admitted that he had driven and wrecked the vehicle. He reported that he was the sole occupant of the vehicle. Mr. Dronebarger reported that he jumped out of the vehicle prior to the crash after he heard voices screaming in his head. Furthermore, Mr. Dronebarger admitted to Officer Saenz that he had consumed one rock of methamphetamine and one beer prior to the automobile accident.

Mr. Dronebarger violated these conditions of supervised release by using and possessing methamphetamine, an illegal controlled substance, in or about March 2021. On March 8, 2021, Mr. Dronebarger verbally admitted to USPO Morris that he used methamphetamine on March 4, 2021, prior to driving the vehicle and prior his arrest for Driving While Intoxicated 3rd or More, a 3rd Degree felony.

### Personal History

On October 20, 2020, Mr. Dronebarger was referred for a mental health assessment by U.S. Probation Officer Tyler Blake (USPO Blake). Mr. Dronebarger reported that he did not want mental health treatment and did not want to attend the appointment. USPO Blake directed Mr. Dronebarger that mental health treatment was ordered as a condition of supervised release and failure to abide by his conditions could result in a request for Court action. On November 3, 2020, Mr. Dronebarger completed a mental health assessment in Birmingham, Alabama. During the assessment, Mr. Dronebarger denied any active symptoms and stated he did not want to take any medications.

Due to Mr. Dronebarger's history of mental illness, on November 30, 2020, the probation office referred Mr. Dronebarger for a second mental health treatment provider for further evaluation. On November 30, 2020, the U.S. Probation Office informed Mr. Dronebarger of the second assessment which was scheduled for December 17, 2020.

On December 3, 2020, the U.S. Probation Office in the Northern District of Alabama was contacted by Connie Gonzales with the Texas Department of Protective and Regulatory Services, Child Protective Services (CPS), in Austin, Texas. Ms. Gonzales reported that it had been reported to their agency that Mr. Dronebarger had possession of his daughter and had cut all communication with his daughter's legal guardian, Rachel Martinez, the child's grandmother. Ms. Gonzales reported that Ms. Martinez could file a police report and a warrant could be issued for Mr. Dronebarger if he failed to resolve the issue. On December 4, 2020, U.S. Probation Jillian Biley-Wooden (USPO Wooden), Northern District of Alabama, contacted Mr. Dronebarger and notified him that he needed to resolve the custody issue or risk the issuance of a warrant by Texas authorities. On December 10, 2020, USPO Wooden spoke with Mr. Dronebarger and his wife, at which time a plan was discussed to return Mr. Dronebarger's daughter back to her grandmother in Austin, Texas, on December 20, 2020. During the conversation, Mr. Dronebarger was reminded of his mental health assessment scheduled for December 17, 2020.

On December 18, 2020, USPO Wooden contacted Mr. Dronebarger about a positive drug test and referred him for a substance abuse assessment. Mr. Dronebarger was directed to call the treatment provider to schedule his intake appointment. When questioned, Mr. Dronebarger denied drug use.

On December 22, 2020, USPO Wooden confirmed that Mr. Dronebarger had not set up his substance abuse assessment as instructed and failed to attend his December 17, 2020, mental health assessment. USPO Woodend contacted Mr. Dronebarger and instructed him to reschedule his mental health assessment. On December 23, 2020, USPO Wooden scheduled a substance abuse assessment for Mr. Dronebarger on January 6, 2021. On January 7, 2021, Mr. Dronebarger failed answer the phone for his substance abuse assessment. On January 8, 2021, the treatment provider made a second attempt to contact Mr. Dronebarger with no success.

On January 14, 2021, USPO Wooden spoke with Rosalia, Mr. Dronebarger's wife, and she reported they had separated. Rosalia reported that Mr. Dronebarger had been using drugs heavily since January 7, 2021, and had accused her of having an affair with the landlord of their apartment in Gadsden, Alabama, a repairman, and a probation officer.

On January 15, 2021, the U.S. Probation Office in the Northern District of Alabama closed interest in Mr. Dronebarger's case and referred him back to the Northern District of Texas, his sentencing district, due to his use of illegal drugs, failure to participate in mental health and substance abuse treatment

as directed, and allegations of ongoing substance abuse. Furthermore, Mr. Dronebarger failed to reside at his approved release residence with his mother. While residing in the Northern District of Alabama, Mr. Dronebarger reported that his mother was a drug user.

On January 19, 2021, U.S. Probation Officer Beau Morris (USPO Morris) contacted Mr. Dronebarger and directed him to return to the Northern District of Texas once he received the results of his COVID-19 test. On January 20, 2021, Mr. Dronebarger received a negative COVID-19 test and was instructed by USPO Morris to report to the U.S. Probation Office, Arlington, Texas, on February 3, 2021.

On February 5, 2021, Mr. Dronebarger reported to the U.S. Probation Office in Arlington, Texas, after having car trouble, and his intake paperwork was completed. One of their two vehicles became disabled during their trip from Alabama. Mr. Dronebarger was given verbal permission to transport his wife to Austin, Texas, since they only had one vehicle. Once in Austin, Texas, Mr. Dronebarger requested permission to reside with the grandmother of his daughter, Rachel Martinez, in Austin, Texas. Mr. Dronebarger reported having no family support or ties in the Northern District of Texas. In attempts to accommodate Mr. Dronebarger and give him the best chance of success, on February 11, 2021, a pretransfer request was submitted to the Western District of Texas, Austin Division. It was requested that Mr. Dronebarger be allowed to remain in Austin, Texas, until the investigation was completed.

On March 3, 2021, the pretransfer request to the Western District of Texas was denied. During the investigation, it was determined that Mr. Dronebarger had relocated from the residence of Rachel Martinez, his child's grandmother, and did not have a stable residence in the Western District of Texas. Ms. Martinez informed Senior U.S. Probation Officer Particia Whitson (USPO Whitson) that Mr. Dronebarger was no longer welcome at her residence after an incident on February 28, 2021, when he acted paranoid, was agitated, and was out of control. His behavior scared and negatively impacted the children living in the residence. Further, on February 28, 2021, Ms. Martinez reported the she contacted Austin, Texas, police due to his behavior which she believed was either drug or mental health induced. The police transported him to South Austin Seton Hospital, Austin, Texas. Mr. Dronebarger was assessed, medicated, and discharged the following day.

On March 4, 2021, Mr. Dronebarger was arrested by Austin, Texas, police for Driving While Intoxicated 3rd or More, a 3rd Degree felony, pending in Case No. D1DC21201154, Travis County, Texas. On March 8, 2021, Mr. Dronebarger posted bond and was released from custody.

On March 8, 2021, Mr. Dronebarger admitted verbally to USPO Morris that he used methamphetamine on February 28, 2021, prior to his contact with the Austin, Texas, police, and again on March 4, 2021, prior to his arrest for Driving While Intoxicated.

Since the commencement of his supervision, Mr. Dronebarger has developed a pattern of noncompliance. Mr. Dronebarger's use and possession of illegal controlled substances, failure to attend substance abuse and mental health treatment as directed, and new criminal conduct make him a risk to the community.

Dkt. No. 41 at 1-5.

On March 10, 2021, the Court issued a warrant for Defendant. *See id.* at 4; Dkt. No. 42. He made his initial appearance in another district and then in this district on May 3, 2021. *See* Dkt. Nos. 43 & 48. He was ordered detained pending a final revocation hearing. *See* Dkt. No. 51.

On March 23, 2021, the USPO submitted an addendum to the Petition (Addendum), alleging the following:

Since the Protect Act Supervised Release Petition of Offender Under Supervision was filed on March 10, 2021, Joshua Shane Dronebarger has further violated his conditions of supervised release as follows:

### I.

**Violation of Standard Condition No. 2**

The defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer.

**Violation of Standard Condition No. 3**

The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.

**Nature of Noncompliance**

Joshua Shane Dronebarger violated this condition of supervised release when failed to report to the office as instructed by his probation officer. On March 9, 2021 U.S. Probation Officer Beau Morris (USPO Morris) instructed Mr. Dronbarger to report to the U.S. Probation Office, Arlington, Texas on March 12, 2021. Mr. Dronebarger failed to report as instructed.

Mr. Dronebarger violated this condition of supervised release when failed to report to the office as instructed by his probation officer. On March 12, 2021 USPO Morris instructed Mr. Dronebarger to report to the U.S. Probation Office, Dallas, Texas on March 15, 2021. Mr. Dronebarger failed to report as instructed.

## Personal History

On March 3, 2021, USPO Morris informed Mr. Dronebarger that his relocation request to the Western District of Texas was denied and he was directed to return to the Northern District of Texas. On March 4, 2021, Mr. Dronebarger was arrested for Driving While Intoxicated by Austin, Texas, police. He posted bond on March 8, 2021, and was released from custody. On March 9, 2021, Mr. Dronebarger was instructed by USPO Morris to report to the U.S. Probation Office, Arlington, Texas, on March 12, 2021, at 3:00 p.m.

On March 12, 2021, Mr. Dronebarger contacted USPO Morris at approximately 1:50 p.m. to provide notification that he would not report at 3:00 p.m. as instructed after his ride from Austin, Texas, cancelled. He stated that Rachel Martinez agreed to transport him but had health problems and she was unable to drive. Mr. Dronebarger further stated that his grandfather purchased a bus ticket for him to Dallas, Texas, and he would arrive during the late-night hours of March 12, 2021. USPO Morris instructed Mr. Dronebarger to report to the U.S. Probation Office, Dallas, Texas on March 15, 2021, at 1:00 p.m. On March 15, 2021, Mr. Dronebarger failed to report as directed.

On March 15, 2021, USPO Morris contacted Ms. Martinez regarding her inability to transport Mr. Dronebarger to the U.S. Probation Office, Arlington, Texas, on March 12, 2021, due to medical issues. She denied having medical issues that kept her from driving Mr. Dronebager to Arlington, Texas, on March 12, 2021. Instead, she reported that Mr. Dronebarger told her he no longer needed a ride, as his grandfather purchased him a bus ticket to Dallas, Texas. Ms. Martinez further stated that Mr. Dronebarger was no longer welcome in her home due to his drug use. She reported that she witnessed him use methamphetamine on March 13, 2021.

On March 15, 2021, USPO Morris spoke with Mr. Dronebarger regarding his failure to report to the U.S. Probation Office, Dallas, Texas, as instructed. During the conversation, Mr. Dronebarger stated he was unable to get on the bus because there were government agents that prevented him from boarding, and he was taken to a hotel where he had to decipher codes and take apart a bedframe. Further, he reported that appliances in our homes have been bugged. During several phone conversations with Mr. Dronebarger on this date, he was agitated, accued USPO Morris of laughing, and hung up the phone. He further stated that his ex-brother-in-law (Spice) was a drug dealer and had been giving him rides. USPO Morris expressed concern about his drug use and mental instability based on the conversations. USPO Morris questioned Mr. Dronebarger about the information he provided; however, he became defensive and stated, "you are not taking this serious", "you just think I am crazy", and "this is not a laughing matter."

On March 16, 2021, Austin, Texas, police were dispatched to 2308 Wickersham Lane, Austin, Texas, after a resident of the apartment complex reported a person in distress that stated he was scared and that people were following him. Upon arrival, Austin, Texas, police took Mr. Dronebarger into custody based on the supervised release violator's warrant.

***The additional violation conduct DOES NOT affect the Statutory Provisions or Chapter 7 Violation Computations previously reported.***

Dkt. No. 45 at 1-2.

Judge Kinkeade ordered on April 23, 2021 that the addendum be filed and that "[t]he additional violations be added to the Probation Form 12C order filed on March 10, 2021." *Id.* at 4.

B. **Revocation Hearing**

Defendant appeared with counsel for a final VTC revocation hearing on June 23, 2021. After his consents and competence were established, Defendant testified under oath that he understood the violations alleged in the Petition and the Addendum and the range of punishment for those violations. He understood that he had the right to plead not true and have a hearing concerning whether he committed

those violations. Defendant knowingly and voluntarily consented to enter his plea to the violations alleged in the Petition and the Addendum before a United States Magistrate Judge and waived any right to allocute before the district judge before sentence is imposed.

alleged in the Petition and the Addendum before a United States Magistrate Judge. Defendant agreed to – and did – plead true to the alleged violations numbered I, II, and III in the Petition and as I in the Addendum, and the government agreed not to pursue the alleged violations numbered IV in the Petition.

And Defendant's counsel and Defendant and the government each made statements related to the appropriate punishment on revocation for these violations. Defendant's counsel requested a sentence of 8 months with no additional term of supervised release, as well as a recommendation that Defendant be placed in a mental health facility at MCFP Springfield or FCI Butner. The government urged that Defendant be revoked and sentenced at the top of the recommended 8-14 month range and agreed that no additional term of supervised release should follow.

At the conclusion of the hearing, the undersigned orally recommended that the pleas of true to the alleged violations numbered I, II, and III in the Petition and as I in the Addendum be accepted by Judge Kinkeade, that Judge Kinkeade accept the government's agreement not to pursue the alleged violations numbered IV in the Petition, that Judge Kinkeade find that Defendant violated his supervised release conditions as alleged, that Defendant's terms of supervised release be revoked, and that he be sentenced to an additional term of imprisonment of 10 months with no

additional term of supervised release and a recommendation that Defendant be placed in a mental health facility at MCFP Springfield or FCI Butner.

Defendant was advised of his right to object to these recommendations to Judge Kinkeade.

## Analysis

Section 3583(e)(3) of Title 18 provides that after considering the factors set out in § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), a court may

> revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case[.]

18 U.S.C. § 3583(e)(3). The relevant factors in § 3553(a) to be considered are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> ***
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> ***
> (4) the kinds of sentence and the sentencing range established for--
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

>> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
>
> (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
>
> (5) any pertinent policy statement--
>> (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. §§ 3553(a), 3583(e)(3).

The United States Court of Appeals for the Fifth Circuit has held that courts may not consider the factors listed in § 3553(a)(2)(A), which include "the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," when revoking a term of supervised release. *United States v. Miller*, 634 F.3d 841 (5th Cir. 2011). Nor may courts impose or lengthen a prison term in order to foster a defendant's rehabilitation. *See United States v. Tapia*, 131 S. Ct. 2382 (2011).

Revocation of a term of supervised release is mandatory if the defendant possesses a controlled substance, possesses a firearm, refuses to comply with drug testing, or tests positive for illegal controlled substances more than three times over the course of one year. *See* 18 U.S.C. § 3583(g). But 18 U.S.C. § 3583(d) also provides that "[t]he court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines from the rule of section 3583(g) when considering any action against a defendant who fails a drug test." 18 U.S.C. § 3583(d); *see also United States v. Brooker*, 858 F.3d 983 (5th Cir. 2017) (noting the issue of whether the Section 3853(d) exception applies where the established violations of a defendant's conditions of supervised release include more than failing a drug test).

Based on Defendant's knowing and voluntary plea of true to the alleged violations numbered I, II, and III in the Petition and as I in the Addendum, Defendant has violated his conditions of supervised release, and revocation of his supervised release is mandatory. Even if Section 3583(d) requires the Court to consider the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, as a possible exception to mandatory revocation where Defendant's violation include possession of a controlled substance, the Court should not, in its discretion, apply this exception where Defendant has repeatedly failed to take advantage of the opportunities he has been afforded. Because Defendant has been unable or unwilling to follow his conditions of supervised

release, after considering the relevant factors identified in § 3583(e) that are set forth in § 3553(a), a term of incarceration is warranted to appropriately address his violations.

As set out in the Petition and the Addendum, the statutory maximum term of incarceration upon revocation of Defendant's supervised release is 2 years. *See* Dkt. No. 41 at 5 (citing 18 U.S.C. § 3583(e)(3)); Dkt. No. 45 at 2 (same). Based on the allegations to which Defendant pleaded true, he is subject to a violation grade of C and a criminal history category of VI, and the resulting range of imprisonment under United States Sentencing Guideline (USSG) § 7B1.4(a) is 8-14 months. Defendant may also be placed back on supervised release following any term of imprisonment imposed upon revocation, but the maximum term of supervised release must not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment imposed upon revocation. *See* Dkt. No. 41 at 5-6 (citing 18 U.S.C. § 3583(h); *U.S v. Jackson*, 559 F.3d 368 (5th Cir. 2009)); Dkt. No. 45 at 2-3 (same). Defendant is subject to a maximum term of supervised release of up to 3 years, minus any revocation sentence. *See* Dkt. No. 41 at 5; Dkt. No. 45 at 2.

Here, a sentence of 10 months – with a recommendation that it be served, in light of Defendant's long history of mental health issues, at a mental health facility at MCFP Springfield or FCI Butner – with no additional term of supervised release would accomplish the relevant sentencing objectives, as identified in § 3583(e)(3) and set forth in § 3553(a). Defendant has continually violated his conditions of supervised

release despite numerous interventions and opportunities to obtain compliance, and this recommended revocation sentence is intended to protect the public and assist Defendant with learning from and avoiding further problematic and criminal behavior in the future. As Defendant's counsel and the government agree, Defendant would not benefit from an additional term of supervised release.

## Recommendation

Defendant Joshua Shane Dronebarger's term of supervised release should be revoked, and he should be committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 10 months with no additional term of supervised release. Defendant should receive credit for time served, and the Court should recommend to the Bureau of Prisons that Defendant be placed at a mental health facility at MCFP Springfield or FCI Butner.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CRIM. P. 59(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 23, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE